IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MIGUEL RICO,                                )
                                            )
        Plaintiff,                          )
                                            )
    v.                                      )        Case No.   20-cv-415-RJD
                                            )
LOUIS BROWDER and SHANE SMITH,              )
                                            )
        Defendants.                         )
                                            )
                                            )

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. §1983.  Doc. 12.  He contends that Defendants violated his First and Eighth Amendment rights at Big Muddy River Correctional Center ("Big Muddy") from July-August 2018 after he filed a complaint against Defendant Shane Smith for violating the Prison Rape Elimination Act ("PREA").  *Id*.  Following the Court's ruling on Defendants' summary judgment motions, Plaintiff proceeds on the following claims:

> Count One:   First Amendment retaliation claim against Defendants Smith and Browder for taking adverse actions against Plaintiff after Plaintiff brought a PREA complaint against Smith.
>
> Count Two:   Eighth Amendment cruel and unusual punishment claim against Defendants Smith and Browder for sexually harassing and retaliating against Plaintiff.

Doc. 153.  At a bench trial on March 23, 2026, Plaintiff and Defendants Smith and Browder testified in person.  Other than the parties' testimonies, no evidence was admitted.

Page **1** of **9**

**Plaintiff's testimony**

Plaintiff was housed at Big Muddy River Correctional Center from June-August 2018. When he first arrived at Big Muddy, he was housed in Receiving.   On June 22, 2018, Plaintiff needed to use the toilet in his cell and decided to use a piece of cardboard to cover up a window on the door. Plaintiff referred to the window as a "spit guard" and defined it as "the hole for the door to look inside."   Covering the spit guard while toileting was a common practice among inmates at Big Muddy.   After Plaintiff covered up the spit guard and sat down on the toilet, Defendant Smith came into his cell "to talk s*** to [Plaintiff]."   Defendant Smith was "saying he does not want to see none of the stuff hanging at the door or cover the door."   Plaintiff "started screaming at him 'don't you see me using the toilet?'"   Defendant Smith said "there's nothing to see here" in reference to Plaintiff's genitals.   Defendant Smith then left Plaintiff's door open so that other inmates could see him using the toilet. Plaintiff got up from the toilet and closed the door.   Subsequently, this incident will be referred to in this Order as "the toilet incident." Plaintiff received a ticket for covering up the spit guard.

The next day, Plaintiff made a PREA complaint.   Plaintiff spoke with an investigator, Lt. Clark, and believed that he was subsequently "not supposed to be near" Defendant Smith. Plaintiff did not recall the dates of these events and needed to refresh his recollection with a grievance that he wrote on July 6, 2018.   At some point after the toilet incident, perhaps on July 4, 2018, Defendant Smith would not allow Plaintiff to use the phone and said "I know you called PREA on me you little b****."   The following day, Plaintiff was not allowed to use the dayroom or the gym.   Defendant Smith said to him "you're not coming out because you're the one…you called PREA on me and then the following day…[Plaintiff] wasn't let out [] for day room or gym."

At some point, Plaintiff was placed on suicide watch.   His cell during the suicide watch

was also in Receiving.   Defendant Smith delivered Plaintiff's food tray and said that he put "spit ranch" on Plaintiff's tray.   Plaintiff did not take the tray.   On approximately ten other occasions, Defendant Smith said that he put "spit ranch" or "sperm ranch" on Plaintiff's food.   Plaintiff refused those trays and was hungry.

At some point, Plaintiff was moved from Receiving to Three House.   He refused the transfer and was then "walked to segregation."   Upon arriving in segregation, Officer Smith performed his strip search.   During the time Plaintiff lived in segregation, Officer Smith appeared in his gallery while he was taking a shower and made a remark regarding Plaintiff's genitals and that Plaintiff was Mexican.   On another occasion, Defendant Smith kicked or banged on Plaintiff's door.

After these events, Plaintiff never wants to speak out again if something happens to him in prison.

**Defendant Shane Smith's testimony**

Defendant Smith is currently employed as a program counselor at Big Muddy.   He was previously employed as a correctional officer at Big Muddy for 19 years.   From June-August 2018, he worked the day shift in Receiving.   Crisis watch cells for inmates who were at risk of committing suicide were located in Receiving.   As a correctional officer, Defendant Smith's primary responsibility was safety and security.    He recalls that Plaintiff was on crisis watch one time.

Defendant Smith explained how inmates in Receiving access the dayroom, gym, and yard. First, an officer in the control room presses a button that partially unlocks the inmates' doors. Then, to open their doors, the inmates must push a button to move the bolt on the inside of their door.   If an inmate in Receiving could not access dayroom/yard/gym for disciplinary reasons or

because he was on crisis watch, then his door would not be initially unlocked when the control room officer pressed the button to unlock the doors of the other inmates in Receiving who could access the dayroom/yard/gym.

Defendant Smith would conduct a "tour" of the inmates in Receiving every thirty minutes and watch for any potential suicide risks, manufacturing of contraband, or other prohibited activity. Defendant Smith recalls seeing the obstruction in Plaintiff's observation window as he performed a tour in June 2018. Inmates at Big Muddy would occasionally place obstructions in their observation windows, but when they did, they received either a warning or a citation. The observation window is located in the cell door and is approximately four inches wide and 18 inches high. It is covered with very strong mesh. Regardless of whether an inmate was using the toilet, he could not place any obstruction to cover the observation window. Because Receiving previously housed inmates in segregation, some of the observation windows also had a "spit guard" made of Plexiglass that covered the window to prohibit inmates from throwing anything at passersby.

When Defendant Smith noticed the obstruction in Plaintiff's observation window, he knocked and asked "is anyone in there" and heard someone make an inaudible statement. Defendant Smith used a key to open the door to Plaintiff's cell. The door opens out, away from the cell. After opening the door approximately five to six inches, Defendant Smith removed the obstruction; the cell was dark and he could see a silhouette of a person sitting on a toilet. Seeing an inmate on the toilet felt uncomfortable and so Defendant Smith immediately shut the door. He heard the click of the bolt when he shut the door. He returned to his desk (approximately 40 feet away) to start writing a disciplinary report. Within 1-2 minutes, Defendant Smith heard the click of a bolt from an inmate's door and saw that Plaintiff was approaching his desk. Plaintiff began

to argue with Defendant Smith.   Defendant Smith told Plaintiff that he was not comfortable with Plaintiff standing at his desk while his head was down, as he was writing the ticket.

After Plaintiff made his PREA complaint, Defendant Smith was interviewed by Lt. Clark. Defendant Smith was not aware of the PREA complaint until this interview.   Defendant Smith gave a statement in which he said that while working in Receiving, he warned every inmate (including Plaintiff) multiple times against obstructing windows.   Defendant Smith does not remember if he continued working in the receiving unit after Plaintiff made his PREA complaint.

In Receiving, Defendant Smith gave lunch trays to inmates in crisis watch cells.   The other inmates in Receiving would leave the unit and eat their meals in Dietary.   At times, Defendant Smith helped distribute meal trays in segregation.

When asked if he had said "it is true what they say about Mexicans they do have little [genitalia]" to Plaintiff, Defendant Smith replied "No I did not."   When asked if he had said anything similar to Plaintiff, Defendant Smith replied "No I did not."   When asked if, prior to Plaintiff making these allegations, he had ever heard Mexicans' genitals described in such a way, he said "No." When asked if he ever instructed the control room officer to keep Plaintiff's cell locked while other inmates went to dayroom, yard, or gym, he said "no." When asked if (to the best of his knowledge) he ever banged or kicked on Plaintiff's cell door,   he said no.   When asked if it was possible that he banged on or kicked Plaintiff's cell door, he said "the only time that we would knock on a door is if we weren't detecting movement" during an inmate count.   When asked if he had ever made an improper comment to Plaintiff in the shower, he said "No. Never." When asked if he had ever said anything to Plaintiff about "his food in any possible contamination of any sort when you gave it to him," he said "No. Never." When asked if he had ever said anything about contaminating or possible contamination to any inmate's food, he said "No. Never." When

Page **5** of **9**

asked "why not?", he said "because it's unprofessional and disgusting."   Defendant Smith has never received a report about semen or spit on an inmate's tray at Big Muddy.   Defendant Smith has never made a decision about an inmate's cell placement.   Defendant Smith does not recall ever performing a strip search on Plaintiff; if he did, it was because he was working in restrictive housing on the day Plaintiff was placed there.

**Defendant Louis Browder**

Defendant Browder worked for the IDOC from 1991-2019.   From 2011-2019, he worked as correctional lieutenant.   PREA complaints against correctional officers were very common. Inmates benefit from the safety and security provided by the act, but they could also use PREA complaints as a means to move cells or get a different cellmate.   Defendant Browder never tried to intimidate inmates from making PREA complaints. When asked if it bothered him when inmates filed PREA complaints against other officers, Defendant Browder said "no" because "it was just the nature of the business."

Defendant Browder was involved in passing lunch trays from June-August 2018. Mealtime was very important to the inmates, and "if [the inmates] were happy we're happy but I add that for my whole career there was let's say a gentleman's agreement between staff and inmates and there's two things you don't mess with you didn't mess with their food and you didn't mess with their mail."   Defendant Browder never heard Defendant Smith say that he was going to give semen or spit ranch to Plaintiff, or anything else that suggested he would contaminate Plaintiff's food.    If Defendant Browder had ever heard about a correctional officer putting semen on a lunch tray, it would have been a big deal.   Defendant Browder recalls Plaintiff refusing his lunch tray on one occasion, but does not remember if Plaintiff told him why he was refusing.

**Findings of Fact**

Page **6** of **9**

To reach a decision in this matter, the undersigned must determine whether Plaintiff or Defendants are truthfully recalling the events that occurred at Big Muddy from June-August 2018. No documentary or physical evidence was admitted; the undersigned only has the parties' recollections of events that occurred nearly eight years ago to consider. Having judged the demeanor of the three individuals and considering their testimonies, the Court finds Defendants to be more credible than Plaintiff. Plaintiff reviewed his grievances during his testimony. At one point, shortly after reviewing a grievance, Plaintiff was recounting the events following the toilet incident and said "I asked him if he can let me go to the gym he said you're not coming out because you're the one—you what I recall is that's the one I'm **I forget what I read** but not coming out because you called PREA on me." It seemed that Plaintiff was not just refreshing his recollection on a specific point by reading the grievance, but that he was relying upon it to give the substance of his testimony.

In contrast, Defendants provided detailed accounts of the events involving Plaintiff and apparently have distinct memories that contradict Plaintiff's testimony. Importantly, the undersigned believed them when they testified that they had never done or said things to any inmate that Plaintiff claimed they did/said to him. Defendants straight-forwardly explained what they could not remember after nearly eight years: where Defendant Smith was assigned after Plaintiff made his complaint, whether Defendant Smith strip searched Plaintiff, and why Plaintiff refused his lunch tray from Defendant Browder on one occasion.

The Court cannot fathom why Plaintiff would file and pursue this lawsuit regarding the alleged events that (the undersigned believes) did not occur. One who had not seen or heard Plaintiff give his testimony may be inclined to believe him simply because no apparent motive exists for fabricating the allegations. Defense counsel spent an inordinate amount of time

discussing the toilet incident and suggested that Plaintiff made the PREA complaint as part of some strategy for cell or prison placement, but the alluded theory was ill-defined.

Regardless, Plaintiff had the burden of proof, and the evidence consists of his word versus Defendants'. Defendants were more credible than Plaintiff. Accordingly, the Court finds that Defendant Smith did not (1) make comments about Plaintiff's genitalia or ethnicity; (2) make comments about contaminating Plaintiff's food; (3) instruct the control officers to prevent Plaintiff from accessing the dayroom, gym, or yard; (4) make any decisions about Plaintiff's cell placement. Similarly, the Court finds that Defendant Browder did not make a comment about Plaintiff's lunch tray or otherwise attempt to punish him for making the PREA complaint.

### Conclusions of Law

To prevail on his First Amendment claim in Count I, Plaintiff must establish that (1) "he engaged in protected First Amendment activity"; (2) "an adverse action was taken against him"; and (3) the "protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (*citing Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Complaints by inmates involving abuse by prison guards are considered First Amendment activity. *Bridges*, 557 F.3d at 552. Here, Plaintiff engaged in protected First Amendment activity by making the PREA complaint. However, he has not proven that Defendants took adverse action against him. Defendants are entitled to judgment in their favor on Count I.

To prevail on his Eighth Amendment claim in Count II, Plaintiff must establish that Defendants inflicted cruel and unusual punishment upon him. Verbal harassment by prison guards may "rise to the level of cruel and unusual punishment" if the harassment is sufficiently serious and harmful. *Beal v. Foster*, 803 F.3d 356, 358-59 (7th Cir. 2015). The undersigned need not determine whether the comments allegedly made by Defendants were sufficiently serious

to constitute an Eighth Amendment violation because the undersigned does not believe Defendants made them.   Nor does the undersigned believe Defendant Smith prevented Plaintiff from going to yard, dayroom, or gym.   Defendants are entitled to judgment in their favor on Count II.

**Conclusion**

Having heard and observed testimony by Plaintiff and Defendants, the Court finds in favor of Defendants and against Plaintiff on Count I and II.   The Clerk of Court is directed to enter judgment in Defendants' favor and dismiss this matter with prejudice.

**IT IS SO ORDERED.**

**DATED: March 25, 2026**

_s/_  _Reona J. Daly_

**Hon. Reona J. Daly**
**United States Magistrate Judge**